### Ex parte CHEUNG SUM SHEE et al.
### Ex parte CHAN SHEE et al.

(District Court, N. D. California, S. D. October 25, 1924.)

Nos. 18416, 18417.

1. **Aliens ⊚⟞23(1)—Chinese wives and children of domiciled merchants not admissible as nonimmigrants.**

Under Immigration Act May 26, 1924, § 3, subd. (6), and sections 5, 25, alien Chinese wives and children of domiciled alien Chinese merchants, being ineligible to citizenship, *held* not admissible as nonimmigrants, notwithstanding the treaty with China of November 17, 1880, giving to certain Chinese subjects all rights, privileges, immunities, and exceptions accorded to citizens and subjects of the most favored nation.

2. **Aliens ⊚⟞23(1)—Chinese wives of citizens of Chinese descent admissible as nonimmigrants.**

Under Immigration Act May 26, 1924, §§ 4, 13, alien Chinese wives of citizens of the United States of Chinese descent *held* admissible as nonimmigrants.

3. **Aliens ⊚⟞28—Consular visé necessary condition to right of entry of alien Chinese wives of citizens of Chinese descent.**

Alien Chinese wives of citizens of United States of Chinese descent, though admissible as nonimmigrants, may be refused entry, if their husbands do not comply with Immigration Act May 26, 1924, § 9, subds. (b), (c), and (d), by filing with Commissioner General the petition therein specified, thereby procuring issuance of immigration visé by proper consular officer.

Habeas Corpus. Petitions by Cheung Sum Shee and others and by Chan Shee and others, to which the Commissioner of Immigration interposed general demurrers. Demurrers in all cases sustained.

Geo. A. McGowan, of San Francisco, Cal., for petitioners.

Sterling Carr, U. S. Atty., and Thomas J. Riordan, Asst. U. S. Atty., of San Francisco, Cal., for the United States.

KERRIGAN, District Judge. These cases come before the court on petitions for writs of habeas corpus by or on behalf of certain Chinese women and children seeking to enter the United States for the first time, in case No. 18416 as the wives and children of domiciled Chinese merchants, or in case numbered 18417 as alien Chinese wives of citizens of the United States of Chinese descent. They present no consular visé issued under the provisions of the Immigration Act of 1924 (43 Stat. 153), but base their claim to be entitled to enter this country upon their status as such Chinese wives or children. All of them were denied admission by the Commissioner of Immigration at the port of San Francisco upon the ground that, being persons ineligible to citizenship and not coming within any of the exceptions contained in said Immigration Act, they were excluded by its terms. Upon appeal to the Secretary of Labor, the decision of the Commissioner was upheld. In case No. 18416, upon the appeal of Cheung Sum Shee (wife) and Cheung Wai Mun (minor child), the ground of the Secretary's ruling is stated as follows:

"Neither the mercantile status of the husband and father, nor the applicants' relationship to him, has been investigated for the reason that even if it were conceded that both these elements exist the applicants would be inadmissible as a matter of law. This is made necessary because of the inhibition against their coming to the United States as found in paragraph (c) of section 13 and that portion of section 5 which reads as follows: 'An alien who is not particularly specified in this act as a nonquota immigrant or a nonimmigrant shall not be admitted as a nonquota immigrant or a nonimmigrant by reason of relationship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration.' "

And the appeals of the other persons in the case so numbered were dismissed upon the same grounds.

In case No. 18417, upon the appeal of Ng Yeut Seung, the Secretary's statement of the reason for his action is as follows:

"This is the case of a young Chinese woman who arrived at the port of San Francisco on July 11, 1924, after the present law had become effective, and seeks admission as the wife of a citizen. Neither the citizenship of the alleged husband, nor the relationship of the applicant to him, has been investigated for the reason that even if it were conceded that both elements exist she would still be inadmissible, as section 13 of the act of 1924 mandatorily excludes the wives of United States citizens of the Chinese race, if such wives are of a race or persons ineligible to citizenship, and the department has no alternative than to recommend exclusion."

And the appeals of the remaining petitioners in the case so numbered were dismissed for the same reason.

By stipulation in open court the original and complete records in each case have been presented by the respondent and are deemed to amend the original petitions in lieu of exhibits filed with them. To the petitions as thus amended the Commissioner of Immigration interposed a general demurrer, which has been argued both orally and by briefs, and the matters are now submitted for decision. The questions involved have been very ably presented, both on behalf of petitioners and of the respondent, and the conclusions I have arrived at have not been reached without difficulty and some hesitation.

I will first consider case No. 18416, in which the petitioners are wives or minor children of domiciled Chinese merchants. Their contention is that they are entitled to enter this country by virtue of treaties existing between the United States and the republic (formerly the empire) of China, by which Chinese subjects are granted the same privileges, immunities, or exemptions in respect to travel or residence in the United States as the citizens or subjects of the most favored nation.

[1] It is true that in treaties between this country and the empire of China entered into prior to the year 1880 the privileges, immunities, and exemptions named were granted to Chinese subjects; but by the treaty of November 17, 1880 (22 Stat. 826), which is referred to in the proclamation thereof as a "treaty between the United States of America and China, for the modification of the existing treaties between the two countries, by providing for the future regulation of Chinese immigration into the United States," it is provided in article 2 thereof that "Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, * * * shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

It will be observed, however, that the wives and children of the classes of persons mentioned are not specifically included, and it was early contended on behalf of our government that they could not claim the right of entry under this treaty. The question came up before the United States Circuit Court for the District of Oregon in the Case of Re Chung Toy Ho et al., 42 F. 398, 9 L. R. A. 204. By section 6 of the Act of July 5, 1884 (23 Stat. 116 [Comp. St. § 4293]), professedly passed to execute the stipulations of this treaty, a certain certificate is required for the admission into the United States of "every Chinese person" other than a laborer who may be entitled by said treaty to such admission. The alien wife of a Chinese domiciled merchant presented herself for admission, claiming to be so entitled under the above-mentioned provision of the treaty of 1880, but did not present said certificate, and on that ground was refused admission. It was adjudged that she was entitled to enter, the court saying:

"Chinese women are not teachers, students, or merchants, and therefore they cannot, as such, obtain the certificate necessary to show they belong to the favored class. But, as the wives and children of 'teachers, students, and merchants,' they do in fact belong to such class, and the proof of such relation with a person of this class, entitled to admission, is plenary evidence of such fact. * * * There is nothing in the act of 1884 that indicates an intention on the part of Congress to limit or restrain the privileges conceded to Chinese merchants by this article [2] of the treaty. It only adds a rule or measure of evidence by which the fact of [their] being such merchants may be conclusively established. * * * My conclusion is that under the treaty and statute, taken together, a Chinese merchant who is entitled to come into and dwell in the United States is thereby entitled to bring with him, * * * his wife and children."

This case was decided in the year 1890, and the doctrine therein announced was followed in the case of U. S. v. Gue Lim (D. C.) 83 F. 136. Upon the appeal of that case to the United States Supreme Court, the question was exhaustively examined, and the reasons of Judge Deady in the Chung Toy Ho Case, supra, was approved. U. S.

v. Gue Lim, 176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544. The rule has not since been questioned and has been uniformly followed. It is admitted by the respondent that it would be applicable in this case, were it not that the Immigration Act of 1924 contains provisions which effectually preclude its further observance, namely, section 5 and subdivision (c) of section 13 thereof.

The policy of the United States from their creation down to the year 1917, on the subject of immigration of aliens, was, excepting with regard to Chinese laborers, extremely liberal, scarcely any one being excluded, and from that year scarcely less so; the restrictions introduced at that time being directed only against insane or feeble-minded persons, paupers, criminals, defectives, anarchists, and the like. But by the Act of May 19, 1921 (42 Stat. 5 [Comp. St. Ann. Supp. 1923, §§ 4289½–4289½dd]), that policy underwent a radical change. By that act, not only was the exclusion of the undesirable classes established by the act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a et seq.) maintained, but only limited numbers of all other foreign-born persons were permitted to enter, section 2 (a) of the act (Comp. St. Ann. Supp. 1923, § 4289½a) providing that "the number of aliens of any nationality who may be admitted under the immigration laws to the United States in any fiscal year shall be limited to three per centum of the number of foreign-born persons of such nationality resident in the United States as determined by the United States census of 1910," and by the Immigration Act of 1924 the numbers were still further reduced by lowering the percentage from 3 to 2 and changing the basis thereof to the census of 1890. It is on certain restrictive provisions of this act that the respondent relies to sustain the action of the Commissioner of Immigration in excluding the petitioners.

It is admitted by these latter that Congress has power to legislate against aliens, to prescribe who may enter and who may not, the method and manner of their entry, and the conditions upon which they may continue to dwell in the United States; but it is their contention that the action of the Commissioner in the present instance was based upon an incorrect construction of said Immigration Act, the effect of which is to infringe their treaty rights as specifically recognized by the act itself.

It is their contention that the act classes them as nonimmigrants, pointing to section 3 thereof, which provides: "When used in this act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except *. * * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation." Their argument is that the treaty of 1880, although referred to in the proclamation as a "treaty between the United States * * * and China, for the modification of the existing treaties between the two countries, by providing for the future regulation of Chinese immigration into the United States," and the treaties thus modified are described as "treaties of peace and friendship," it is in effect a treaty of commerce and navigation; that it permits the entry into the United States of a Chinese merchant solely to carry on trade, and has been construed by the Supreme Court of the United States, as already shown, as entitling the wives and children of such merchant to admission; and that subdivision 6 of section 3 of said Immigration Act was enacted by Congress with knowledge of the construction thus placed upon the said treaty and the statutes enacted to carry it into effect.

I would find no difficulty in agreeing with this contention of the petitioners, were it not for the fact that a careful consideration of another section of the act, namely, section 5, convinces me that the construction of subdivision 6 of section 3 thereof upon which such contention is founded has been by Congress excluded ex industria. That section contains this provision: "An alien who is not particularly specified in this act as a * * * . nonimmigrant shall not be admitted as a * * * nonimmigrant by reason of relationship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration," and it is further provided in section 25 that an alien, "although admissible under the provisions of the immigration laws other than this act, shall not be admitted to the United States if he is excluded by any provision of this act."

As already pointed out, the treaty of 1880, while permitting "teachers, students [and] merchants together with their body and household servants" to enter, does not in terms permit their wives and children to do so, and their entry has been so far sanctioned by virtue of their relationship to a member of one of those classes. The pres-

ent act designates such merchants as non-immigrants, and the provision alluded to, to the effect that an alien who is not particularly specified in the act as a nonimmigrant shall not be admitted as such by reason of relationship to any individual who is so specified, seems to me to be directly pointed at persons in the situation of these petitioners.

I am not unmindful of the strong argument put forth in their behalf that husbands and wives and their children have a natural right to be and reside with one another, a right universally recognized and enforced by municipal law; but it must of necessity give way to the right of a sovereign state to dictate as to what alien persons shall be permitted to come within its territorial boundaries. In view of these conclusions, I must hold that as to case No. 18416 the demurrer of the respondents is well taken.

As to case No. 18417, it has already been stated that the Secretary of Labor dismissed the appeal of petitioners upon the ground that, being aliens ineligible to citizenship, although the wives of American citizens of the Chinese race, they were excluded by section 13 of the Immigration Act.

[2] It is of course apparent that the object of the act under consideration was to restrict the immigration of aliens to an extreme degree; but it is equally clear that that object is not thwarted, or its attainment even menaced, by the admission of the wife and children ineligible to citizenship of an American citizen. Such cases must of necessity be comparatively rare, and must as the natural effect of existing legislation on the subject tend to become more so. Moreover, the act itself manifests a purpose to admit aliens who are the wives or children of American citizens, even though by their admission the number of aliens admitted from the country from which they come is thereby caused to exceed the quota prescribed for that country. And the act goes so far (section 4, subd. [d]) as to admit the alien wife and children ineligible to citizenship of an alien also ineligible to citizenship, if he has entered or seeks to enter for the purpose of carrying on the avocation of a minister of religion or professor at a college, academy, seminary, or university, thus plainly manifesting an intent not to disrupt family life, even though its realization entails the admission of individuals belonging to a class not eligible to citizenship.

The exclusion of persons ineligible to citizenship is accomplished under the act by section 13, subd. (c), which provides: "No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissible as a nonquota immigrant under the provisions of subdivision (b), (d), or (e) of section 4; or (2) is the wife, or the unmarried child under 18 years of age, of an immigrant admissible under such subdivision (d), and is accompanying or following to join him; or (3) is not an immigrant as defined in section 3."

It will be seen by reference to the subdivisions or sections mentioned that all aliens ineligible to citizenship are thus excluded, except (1) an immigrant previously lawfully admitted to the United States who is returning from a temporary visit abroad; (2) an immigrant who continuously for at least two years preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the avocation of minister of any religious denomination, or professor of a college, academy, seminary, or university, and his wife, and his unmarried children under 18 years of age, if accompanying or following to join him; (3) an immigrant who is a bona fide student of at least 15 years of age, who seeks to enter the United States solely for the purpose of study at an accredited school, college, academy, seminary, or university, particularly designated by him and approved by the Secretary of Labor; (4) a government official, his family, attendants, servants, and employees; (5) an alien visiting the United States temporarily for business or pleasure; (6) an alien in continuous transit throughout the United States; (7) an alien lawfully admitted to the United States who later goes in transit from one part of the United States to another through foreign contiguous territory; (8) a bona fide alien seaman serving as such upon a vessel arriving at a port of the United States and seeking to enter temporarily the United States solely in pursuit of his calling as a seaman; and (9) an alien entitled to enter the United States under and in pursuance of the provisions of an existing treaty of commerce and navigation.

I have already referred to subdivision (a) of section 4, which allows to enter, even in excess of the quota, the alien wife or unmarried child under 18 years of age of a citizen of the United States; the term "alien," of course, including both those eligible and ineligible to citizenship. Although under the broad terms of section 13, subd. (c), of the act, the wife ineligible to citizen-

ship of an American citizen is excluded by reason of not being included within the specific exceptions contained in that section, I cannot believe that it was the intention of Congress to exclude such person, in view of the other provisions of the act referred to bearing upon the subject. To admit an alien teacher or minister of religion ineligible to citizenship, and their wives and minor children, also ineligible, and to exclude the wife of an American citizen solely by reason of a like ineligibility, is so inconsistent and unreasonable that it is impossible to believe that Congress intended it.

As said by Judge Lowell, United States District Judge for the District of Massachusetts, in the case of In re Chiu Shee, upon this precise point (opinion filed October 17, 1924, 1 F.[2d] 798): "The result of such a construction would be that Congress showed itself more solicitous for the welfare of an alien minister or professor, whose wife is allowed to enter, * * * than for that of American citizens. Such a result would be absurd, and we are told by the highest authorities that an act of Congress should not be so construed as to lead to absurdities. Lau Ow Bew v. U. S., 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340; Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226, and cases cited." Moreover, as pointed out by Judge Lowell in the case cited, when the bill resulting in this legislation was reported to the House, the report of the House committee stated specifically that wives of American citizens were exempted from the exclusion provisions of the bill (Congressional Record, vol. 65, No. 93, p. 5851), and the discrepancy between section 4 (a) and section 13 (c) can be reconciled by construing the latter as applying only to aliens who are not the wives of American citizens.

[3] I conclude, therefore, that it would have been the duty of the respondent in the case now under consideration to permit the petitioners to enter, if their husbands, being citizens of the United States, had complied with the provisions of section 9, subds. (b), (c), and (d), of the act, by filing with the Commissioner General the petition therein specified, resulting in the issuance to said petitioners of an immigration visé by the consular officer to whom application therefor had been made; but, as it appears that no such proceedings were taken by or on behalf of the petitioners, they have not established their right to enter.

The demurrer to the petition is therefore sustained.